CULPEPPER, Judge.
This is a suit for damages for personal injuries. Plaintiff was standing on or near the edge of the highway when he was struck by the defendant motorist.
The issue is factual, i. e., whether plaintiff was standing on the shoulder or in the defendant motorist’s lane of traffic at the time the vehicle skidded into him.
The accident occurred on the cold, rainy night of January 13, 1966 at about 11:00 p. m. The scene is on Louisiana Highway 379 (the old Spanish Trail), a two-lane blacktopped highway, running east and west between Westlake and Sulphur, Louisiana.
Plaintiff had pulled into a side street or driveway on the south side of the highway and, in backing out across the highway, inadvertently backed the rear of his car into a ditch along the north side. He phoned a wrecker and then went back and was standing in front of his automobile *378 waiting to give directions to the operator thereof when he was struck by the defendant Bright’s vehicle.
Johnson’s version of the accident is that the front bumper of his vehicle was entirely off the pavement on the north side of the highway and that he was standing “between the left grill and the left light” as close as he could get to his car; and that he was at least one foot from the pavement. He had seen defendant’s headlights approaching from the east but judged there was no danger because defendant’s lane of traffic was unobstructed. Plaintiff was waving to the wrecker operator, who was approaching from the west, when Bright’s car skidded into him.
Mr. Bright was driving in a westerly direction on the highway. He testified that he was traveling about 30 miles per hour and first saw the plaintiff standing in the middle of the west bound lane of traffic waving his arms; Johnson was then about 70 feet away; almost at the same time he saw Johnson’s .automobile which was protruding two or three feet over the pavement on the north side; he applied his brakes and his vehicle started skidding on the wet pavement; his right rear fender struck the left front fender of the Johnson vehicle and then struck Mr. Johnson.
Plaintiff’s version of the accident is substantially corroborated by the testimony of the wrecker operator, Mr. Naquin, who stated that when he was ISO to 200 feet away he saw the plaintiff’s vehicle in the ditch on the north side of the highway and saw the plaintiff standing in front of the vehicle about on the edge of the pavement. Naquin says that he also saw the defendant’s headlights approaching and saw the vehicle go into a skid and strike plaintiff.
In resolving this factual issue the trial judge found:
“The accident was caused by the negligence of Marlin E. Bright who was not keeping a proper lookout and maintaining his automobile under proper control under the circumstances of the weather and road conditions. The roadway ahead of the Bright automobile was clear of obstruction. If he had not lost control he could easily have avoided any contact with Johnson or the automobile. This Court concludes that Johnson was free of contributory negligence.”
There is clearly sufficient testimony, if believed by the trial judge, to support these factual findings. Certainly there is no manifest error. Under these facts, the doctrine of “sudden emergency” [1] urged by defendant has no application. Any emergency which existed was created by the negligence of Bright in failing to keep his car under control. There was no negligence on the part of plaintiff which either created an emergency or contributed to the accident.
The next issue is whether the quantum of damages awarded is excessive. The only item contested on appeal is $4,000 in general damages.
On the night of the accident the plaintiff did not appear to be seriously injured. However, the next morning, January 14, 1966, he was seen by Dr. Jerome W. Am-brister, an orthopedic surgeon, who found a partial tear of the medial ligament of the left knee. Johnson was placed in a cylinder cast from the left thigh to the left ankle until February 26, 1966, at which time it was removed and he was instructed *379 to take exercises to rehabilitate the muscles. It was Dr. Ambrister’s original prognosis that Johnson would be able to return to work, as a heavy equipment operator, by about May 1, 1966. Plaintiff actually did return to work on May 25, 1966, but he continued to have pain and discomfort in his knee. This is corroborated by the testimony of Dr. Ambrister who examined plaintiff on March 11, 1967, two weeks before the trial of this case, and found there was still one inch of atrophy in the left thigh. Dr. Ambrister expressed the opinion that as of the date of this last examination, which was approximately 14 months after the accident, plaintiff still had residual temporary disability of from 71/2 to 10 per cent in the leg.
Under the circumstances, the award of $4,000 in general damages is clearly within the great discretion of the trial judge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed.

. Defendant cites many cases, including King v. Vico Insurance Company of St. Louis, La.App., 182 So.2d 135 (4th Cir. 1966), in which the rule is stated as follows : “Here and elsewhere there is abundant authority to the effect that it is not actionable negligence to bring a car to a sudden stop in an emergency not created by the driver where there is an oceur-rence which may cause serious accident and where the reaction of the driver must take place before there is time to consider the possible result of the sudden stop, and where the driver does what any ordinarily eareful driver would have done and does not increase the peril by acting in an abnormal way.”